Robert O'QUINN, Appellant,

v.

The STATE of Texas, Appellee.

No. 42393.

Court of Criminal Appeals of Texas.

Dec. 16, 1970.

Rehearing Denied Feb. 17, 1971.

John J. Browne, Louis Andrews, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and E. B. McDonough, Jr., Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., of Austin, for the State.

## OPINION

WOODLEY, Presiding Judge.

The offense is possession of heroin; the punishment, enhanced by two prior convictions for felonies less than capital, life.

Appellant's first ground of error is that evidence obtained as result of an illegal search and seizure was admitted in evidence against him at the trial. Appellant specifically contends that the affidavit filed in support of the search warrant failed to state probable cause for the issuance of the same in light of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L. Ed.2d 723, and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637.

The affidavit contained in the record before this court reads as follows:

"STATE OF TEXAS

"COUNTY OF HARRIS

"Before me, the undersigned authority, on this day personally appeared the undersigned affiants, who being by me severally sworn, upon their oaths state, that: A certain building, house and place, occupied and used as a private residence, located in Harris County, Texas, described as a two story frame building covered with light green asbestes siding being the upstairs apartment at 438½ West 21st Street, in the City of Houston, County of Harris and the State of Texas and all out buildings and motor vehicles apurtenant to the above described premises, and being the building, house or place of RobertLee O'Quinn, a white male and other person or persons unknown to the affiants by name, identity or description * * * is a place where we each have reason to believe and do believe that said party so occupying and using, as a private residence, the said building, house and place has in his possession therein narcotic drugs, as that term is defined by law, and contrary to the provisions of law, and for the purpose of the unlawful sale thereof, and where such narcotic drugs are unlawfully sold; that on or about the 25 day of October, A.D. 1967, (SEE ATTACHED AFFIDAVIT) * * *. 'On October 23, 1967, affiants received information from a credible and reliable person that Robert Lee O'Quinn (WM) was living at 438½ West 21st street which is the upstairs apartment in Houston, Harris County, Texas and that Robert Lee O'Quinn had heroin in his possession for sale and use. Although I do not *wish* this person who gave me this information concerning Robert Lee O'Quinn, She has in the past, on several occasions given me information concerning people possessing Narcotics and on each occasion her information has proven to be true and correct. Affiants knowing Robert Lee O'Quinn to be a user of narcotics, set up a surveillance on the 438½ West 21st street address on October 23, 1967, between the hours of 2:20 PM and 4:30 PM and observed in this length of time two known users of narcotics enter the house at 438½ West

21st street in the apartment upstairs and leave in about five minutes.

"Affiants again resumed their surveillance at 438½ West 21st street on October 24, 1967, between the hours of 6:35 PM and 9:10 PM and at approximately 7:05 PM, affiants observed a white male, whom officers know to be a user of narcotics, enter the house at 438½ West 21st street in the upstairs apartment and then leave at approximately 7:12 PM. At approximately 7:50 PM, affiants observed a white female enter the unstairs apartment at 438½ West 21st street and remain there for approximately 5 minutes and leave. This white female is also a known user of narcotics.

"Affiants resumed their surveillance at 438½ West 21st street on October 25, 1967, between the hours of 5:30 PM and 7:15 PM and at approximately 6:10 PM officers observed a white male, whom officers know to be a user of narcotics, enter the upstairs apartment at 438½ West 21st street and leave approximately seven minutes later.

J. E. Liles, affiant.
T. A. Bell, affiant.

"Subscribed and sworn to before me, by the within named affiants, on this the 25 day of October, A.D., 1967.

Milton Schwartz 8:50 P.M.
Judge of Corporation Court
No. 2 of the City of Houston,
Harris County, Texas."

It is appellant's contention that the affidavit is insufficient for the reason that the same failed to set forth the underlying circumstances from which the informant concluded that narcotics were being possessed by appellant at the address shown in the search warrant.

█ The affidavit above quoted contains factual circumstances sufficient for an issuing magistrate to make an independent finding of the existence of probable cause. The informer was one who had, in the past, "on several occasions" given the officers information concerning people possessing narcotics, and on each occasion her information had proved to be true and correct. The affiants knew of their own personal knowledge that appellant was a user of narcotics. The affiants, by virtue of their own independent investigation, further corroborated the information received of the informant by putting appellant's residence under surveillance on three separate occasions. Each time the officers observed known narcotics users enter appellant's residence and leave minutes later.

This court has held that affidavits substantially similar to the one in question were sufficient to show probable cause and to meet the requirements of Aguilar v. Texas, supra. Aguilar v. State, Tex.Cr. App., 444 S.W.2d 935; Acosta v. State, Tex.Cr.App., 403 S.W.2d 434; Bosley v. State, Tex.Cr.App., 414 S.W.2d 468; and Gonzales v. State, Tex.Cr.App., 410 S.W. 2d 435, cert. denied, 387 U.S. 925, 87 S.Ct. 2044, 18 L.Ed.2d 982; Brown v. State, Tex.Cr.App., 437 S.W.2d 828, cert. denied, 393 U.S. 1089, 89 S.Ct. 850, 21 L.Ed.2d 782. See also Acosta v. Beto, and Gonzales v. Beto, (5th Cir.) 425 F.2d 963.

Appellant's second ground of error is that the search warrant was invalid for the reason that a judge of the corporation court[1] is not an official authorized in Texas to administer oaths to an affidavit in support of search warrants.

█ It is the established rule in Texas that an affidavit or complaint for a search warrant must be made before an officer authorized to administer the same before a search warrant may issue. Greer v. State,

---

1. The name "corporation court" was changed to the "Municipal Court" by Act of the 61st Leg. p. 1689, effective September 1, 1969, (Art. 1194A V.A.C.S.) which provides "all other statutory references to the corporation court shall be construed to mean the municipal court."

Tex.Cr.App., 437 S.W.2d 558; Vaughn v. State, 146 Tex.Cr.R. 586, 177 S.W.2d 59; 51 Tex.Jur.2d, Searches and Seizures, Sec. 24, p. 697. See also Wheeler v. State, 172 Tex.Cr.R. 21, 353 S.W.2d 463.

Article 23(18) Vernon's Ann.Civ.St. defines "affidavit" as a statement in writing of a fact or facts signed by a party making it, and sworn to before some officer authorized to administer oaths, and officially certified to by such officer under his seal of office. Article 26 V.A.C.S. sets forth those persons given the authority to administer oaths, affidavits, and affirmations. Section 1 of that statute reads as follows:

"All oaths, affidavits, or affirmations made within this State may be administered and a certificate of the fact given by:

(a) a judge, clerk, or commissioner of any court of record;

(b) a notary public;

(c) a justice of the peace;

(d) any member of any board or commission, created by the laws of this State, in matters pertaining to the duties thereof."

Since the above statute fails to give the judge of a corporation court the authority to administer oaths or affidavits, such authority, if any, must be shown from the intent of the legislature as reflected in other legislation.

The legislature in the 1925 Code of Criminal Procedure (Art. 33), designated those officials who were "magistrates." Included within that statute were justices of the peace and the mayor or recorder of incorporated cities, or towns.

■ The title "magistrate" has come to connote one having duties which are judicial in nature. As early as 1884, the Texas Court of Appeals made the following comments regarding the duties of the justice of the peace when serving as a magistrate:

"A justice of the peace is a magistrate. (Code of Criminal Procedure, Article 42) When a justice sits for the purpose of inquiring into a criminal accusation against any person, he sits not as a justice of the peace but as a magistrate, and the court which he then holds is not a justice's but 'an examining court'. (Code of Criminal Procedure, Article 63) When holding such a court, his functions as a magistrate are the same as those of the judges of the county, district, supreme, or court of appeals, when they sit as magistrates to hold an examining trial. The same rules govern each. (Hart v. State, 15 Tex.Ct.App. 202). Kerry v. State, 17 Tex.Ct.App. 178."

■ The present Vernon's Ann.Code of Criminal Procedure (Art. 2.09) sets forth those officials who are magistrates and includes both justices of the peace and the mayor, recorder and judges of the city courts of incorporated cities or towns. Although the corporation court is not a court of record under Art. 26 V.A.C.S., clearly the judge of the corporation court has the authority to issue a search warrant under Article 725b, Vernon's Ann.P.C.

Article 18.01 V.A.C.C.P. defines a search warrant as "a written order, issued by a magistrate, and directed to a peace officer" and provides "No search warrant shall issue for any purpose in this State unless a sworn complaint therefor shall first be filed with the issuing magistrate setting forth sufficient facts to satisfy the magistrate that probable cause does in fact exist for its issuance."

Art. 725b, Sec. 16, V.A.P.C., provides for the procuring of a search warrant upon affidavit of a peace officer that any person has in his possession any narcotic drug contrary to the Uniform Narcotic Drug Act, the application and proceedings to conform as near as may be to the provisions of Title 6 (now Chapter 18) of the Code of Criminal Procedure.

An affidavit complying with Art. 725b, § 16 supra, necessarily charges some person

with the commission of an offense (unlawful possession of a narcotic drug) and the magistrate may issue a warrant of arrest as well as a search warrant. (Art. 18.10 V.A.C.C.P.)

This is also true as to an affidavit for the issuance of a search warrant under Title 6, now Chapter 18, supra, to search for stolen property; to seize the property and to require the person accused of having stolen or. concealed it brought before the magistrate.

Authority for administering an oath by the judge of a municipal court is found in Art. 45.01 V.A.C.C.P. which provides in part: "Complaints before such court may be sworn to before any officer authorized to administer oaths or before the recorder, clerk of the court, city secretary, city attorney or his deputy, each of whom, for that purpose, shall have power to administer oaths."

That it was not the intent of the legislature to limit the authority of the judge, recorder or mayor to administering the oath to complaints charging offenses which the corporation court has jurisdiction to try is made clear by Art. 2.09 V.A.C.C.P., making the mayors and recorders and the judges of the city courts of incorporated cities or towns magistrates and the language found in Art. 15.03 V.A.C.C.P.:

"A magistrate may issue a warrant of arrest * * * 2. When any person shall *make oath before the magistrate* that another has committed some offense against the laws of the State * * *,"

and Art. 15.04 V.A.C.C.P.:

"The *affidavit made before the magistrate* or district or county attorney is called a 'complaint' if it charges the commission of an offense."

Attention is also directed to the portion of Art. 18.07 V.A.C.C.P. relating to issuance by a magistrate of warrant to search for and seize property alleged to have been stolen and concealed—*"whenever written sworn complaint is made to such magistrate."*

Rangel v. State, Tex.Cr.App., 435 S.W. 2d 143, correctly held that there was no merit in the contention that the judge of a corporation court was without authority to administer the oath to an affidavit for a search warrant.

■ Appellant's third ground of error is that the search warrant in question is void for the reason that the affidavit in support thereof was not made before the lawful authority designated thereon. As noted above, the jurat was signed by Milton Schwartz as "Judge of Corporation Court No. 2 of the City of Houston, Harris County, Texas." It is appellant's contention that Milton Schwartz was not the judge of that particular court, and therefore he did not have the official capacity designated below his signature.

At the trial, it was shown by appellant that Motion No. 58–72 was passed on January 8, 1958, by the Mayor and City Council of the City of Houston appointing Mr. Joe Harris as Judge of Corporation Court No. 2. The Assistant City Secretary testified that she had made a thorough search of the City records and found that between January 8, 1958, and October 25, 1967, no other appointments had been made to that particular court. Appellant contends that such evidence conclusively proves that Milton Schwartz was not the judge of that court and, therefore, King v. State, 167 Tex.Cr.R. 440, 320 S.W.2d 677, applies. We do not agree.

In King, supra, the jurat affixed to the affidavit was signed by "Thomas M. Maes", and below the signature it read "W. C. Ragan, Justice of the Peace, Precinct No. 1, Harris County, Texas." This court pointed out that the jurat was not regular on its face, and in absence of a showing that it was sworn to before one authorized by law to administer the same, it was error to admit evidence obtained as the result of a search warrant based upon

the affidavit. Such a rule is not applicable in the present case, for here the jurat appears regular on its face.

Article 1200c, Sec. 1, V.A.C.S., as amended, provides that a city having the population the size of Houston may, by ordinance, establish two or more corporation courts, not to exceed one court for each eighty thousand population. It also authorizes the mayor to appoint, with the confirmation of the governing body, two or more judges for each such court, so that any of such courts may be in concurrent or continuous session either day or night.

Milton Schwartz was acting as judge of Corporation Court No. 2. The absence of a record of his appointment in the Records of the City was not a fact that would render the search warrant issued by him illegal or prove conclusively that he was not authorized to act as judge of said court or as a magistrate.

In ground of error No. 4, appellant incorrectly contends that a member of the jury who professed to know the law "made a statement to the effect that a life sentence could be served in as little as ten years with good behavior," and that this was a misstatement of the law, to wit, Art. 42.12, Sec. 15, V.A.C.C.P.

The affidavits of the jurors attached to the motion for new trial and introduced in support thereof were that during the deliberation of the jury "Someone made the statement 'if he gets life he could get out in ten to twenty years on good behavior.'"

Art. 42.12(15) V.A.C.C.P. expressly authorizes release on parole "in any case" after serving 20 calendar years, and that "time served on the sentence imposed shall be the total calendar time served and all credits allowed under the laws governing the operation of the Department of Corrections and executive clemency."

The statement attributed to "someone" was not an incorrect statement. Guillory v. State, Tex.Cr.App., 400 S.W.2d 751; Walton v. State, Tex.Cr.App., 398 S.W.2d 555.

■ It is a matter of common knowledge, that inmates of the Texas Department of Corrections are allowed credits in addition to calendar time and are released on parole. Graham v. State, Tex.Cr.App., 422 S.W.2d 922.

■ Further, the statement did not constitute jury misconduct or require reversal because (1) it was a lone incidental reference, (2) the life sentence was based upon the allegations of the indictment and findings of fact by the jury which made it mandatory under Art. 63 P.C.

Ground of error No. 4 is overruled.

In his fifth ground of error appellant alleges error in the trial court's refusal to hear evidence on the reliability of the informer upon whose information the issuance of the search warrant was based. At the trial, attorney for appellant, in his cross-examination of one of the investigating officers, attempted to ascertain whether the informant: (1) was a narcotic addict, (2) was paid for his information, (3) was a man or woman, or (4) was related to the officer. In support of his contention, appellant cites Perry v. United States, 118 U.S.App.D.C. 360, 336 F.2d 748. In Perry, officers received information that the defendant was selling narcotics in the vicinity of a certain address. Without obtaining a search warrant, the officers went to the location and observed from a distance the defendant stop and exchange something with two narcotics addicts. On the basis of what they observed, the officers placed the defendant under arrest. The court held that under these circumstances, the defendant should have been allowed to inquire into the underlying circumstances from which the informant concluded the defendant was selling narcotics. The circumstances surrounding the present case are not analogous to those found in Perry v. United States, supra.

In the case at bar the officers were enroute to appellant's residence for the purpose of executing a valid search warrant. Prior to their arrival they were advised over the police radio to contact the informant. They learned from the informant that appellant would be leaving his residence with heroin in his possession. As the officers approached the residence, they observed appellant leaving in his automobile. They stopped appellant's vehicle and after they identified themselves as police officers, the appellant jumped from his car and ran down the street. He was apprehended, warned of his rights, and taken back to his apartment. The officers presented appellant with the search warrant and he refused them entrance to the premises. The officers then forced their way into the apartment and executed the search.

No error is shown by the trial court's refusal to require the officer to answer the above questions, for such would have only served to identify the informant. There is no showing that the informant was present during the commission of the offense or that he was a material witness at the trial. Hernandez v. State, Tex.Cr. App., 437 S.W.2d 831; Cumby v. State, Tex.Cr.App., 399 S.W.2d 814; Thayer v. State, Tex.Cr.App., 397 S.W.2d 236; Lopez v. State, Tex.Cr.App., 397 S.W.2d 76; Artell v. State, Tex.Cr.App., 372 S.W.2d 944.

Appellant's grounds of error 6 through 10 complain of the trial court's admission into evidence of appellant's oral statement to the officer which led to the recovery of the heroin. The record reveals that upon entering appellant's apartment, the officers found two men and a woman. They took each of the occupants, including the appellant, into the living room and read to them the statutory warning. Appellant then called Officer J. E. Liles over to the side and told him " * * * you're going to find it anyway, I might as well tell you where it's at."

Appellant then pointed to the bedroom and said "* * * in my room it's in the bed under the covers." The officer went to the bedroom and recovered a glass vial containing six packages of what was subsequently proven to be heroin. The record reveals that between one and one-half and two hours elapsed from the time appellant was taken into custody and the time he was taken before a magistrate.

The trial court made an independent finding, out of the presence of the jury, concerning the issue of the voluntary nature of appellant's statement. In resolving the issue against appellant, the court found that appellant, only a short time before the making of such statement and at a time when he was under legal restraint, had been twice duly warned as to his constitutional and statutory rights; that the statement made by appellant to Officer Liles was freely and voluntarily made; and in making such statement, appellant had knowingly, intelligently and voluntarily waived his constitutional and statutory rights. The jury was properly charged under Art. 18.22 V.A.C.C.P., on the issue of voluntariness, and also resolved the same against the appellant.

This court held in St. Jules v. State, Tex.Cr.App., 438 S.W.2d 568, that it is not error to admit appellant's oral confession where he has been twice warned of his rights under Art. 38.21 C.C.P. (1965) and Art. 38.22 C.C.P. as amended (1967). Art. 38.21 provides:

"The confession of a defendant may be used in evidence against him if it appear that the same was freely made without compulsion or persuasion, under the rules hereafter prescribed."

Art. 38.22, as amended, reads in part:

"1. The oral or written confession of a defendant made while the defendant was in jail or other place of confinement or in custody of an officer shall be admissible if: * * *

"(e) It be made orally and the defendant makes a statement of facts or circum-

stances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed."

The oral statement was not inadmissible under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

 Appellant's contention that the oral statement made during the search was inadmissible for the reason that he was not taken before a magistrate without unnecessary delay as required by Art. 14.06, as amended (1967) and Art. 15.17, as amended (1967), and that there was a causal connection between this and the making of the oral statement is overruled.

The remaining grounds of error have been examined and we find no reversible error.

The judgment is affirmed.

ONION, Judge.

I concur in the result reached, but I cannot, after long and careful deliberation, agree with the reasoning expressed in the majority opinion as to ground of error #2.